PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| ANDRE D. RICE, | ) |
|       Plaintiff, | ) CASE NO. 4:17CV2684 |
| v. | ) JUDGE BENITA Y. PEARSON |
| WARDEN NEIL TURNER, *et al.*, | ) |
|       Defendants. | ) **MEMORANDUM OF OPINION AND ORDER** |
| | ) [Resolving ECF No. 8] |

*Pro se* Plaintiff Andre D. Rice filed a 331-paragraph Complaint asserting claims under 42 U.S.C. § 1983. Plaintiff names three groups of Defendants. First, He names as Defendants the following officials at the North Central Correctional Complex (NCCC): Warden Neil Turner, Deputy Warden of Operations Taggered Boyd, Education Administrator David Creader, Librarian Ms. McKinna, Case Manager James Webb, Institutional Inspector L. Shuler, Unit Manager Shelly Curry, Notary Ms. Donahue, Sergeant Elliott, Rules Infraction Board Member Sergeant Rushing, Rules Infraction Board Member Sergeant Seville, Corrections Officer Spellman, Corrections Officer Spielman, and Security Threat Group ("STG") Coordinator Mr. Walton. Second, he names as Defendants the following officials at Trumbull Correctional Institution ("TCI"): Deputy Warden of Operations Bowen, STG Coordinator Lieutenant Black, Principal Mr. Liztenburger, Librarian D. Filkorn, and Institutional Inspector Frederick. Finally, Plaintiff names as Defendants Ohio Department of Rehabilitation and Correction ("ODRC") Director Gary Mohr and Assistant Chief Inspector Kelly Reichle. In his Complaint (ECF No. 1),

(4:17CV2684)

Plaintiff alleges he was unfairly labeled as a gang member, causing his security classification to be increased. He contends Defendants did not properly supervise the officers who engaged in these actions, or improperly responded to his grievances. He seeks monetary relief.

Plaintiff filed a Motion for Leave to Amend the Complaint ([ECF No. 8](ECF No. 8)) on February 5, 2018. His proposed Amended Complaint is actually a proposed supplemental pleading and pertains to an incident completely unrelated to any of the incidents described in the Complaint. Furthermore, it is directed primarily at a person who is not named as a Defendant, either in this action or in the supplemental pleading. Given that the Complaint already contains 331 paragraphs, describing incidents occurring over a two-year period of time, the Court denies his request for leave to add another incident to the pleading. Because it is unrelated to any events described in this action, Plaintiff can file another action against the individuals against whom he intends to bring those claims. His Motion for Leave to Amend Complaint ([ECF No. 8](ECF No. 8)) is denied.

## I. Background

**A. North Central Correctional Complex**

Plaintiff alleges that on July 28, 2015, he was in the NCCC Law library and overheard Librarian McKinna speaking to another inmate about printing Sovereign Citizen documents. Plaintiff expressed interest in the documents to the other inmate and the inmate allowed Plaintiff to review them. Plaintiff then approached McKinna and asked if he could get a set of the documents. McKinna indicated Plaintiff would have to pay for printing, and he agreed to the terms.

(4:17CV2684)

With the documents in his possession, Plaintiff went to one of the word processors in the law library and began to complete the documents. The library has posted a rule that word processors are only to be used to complete document pertaining to litigation. Plaintiff describes the Sovereign Citizen documents as business-type documents. He indicates he completed his rough draft of the documents by the middle of November 2015. He also indicates McKinna watched him work on the documents in the library. The word processors were closed down in December 2015 for security review. When they were available again, Plaintiff logged in and discovered his documents had been deleted. He asked why this had occurred, and McKinna informed him it was because they were not court litigation documents. McKinna issued a conduct report for him on December 23, 2015— the actual charge on the conduct report is not stated in the pleading. Sergeant Elliott called him into his office, read the report to him, and asked for his plea. Plaintiff pled guilty and Elliott imposed extra duty hours to be completed by the end of the year. Corrections Officer Spillman[1] signed off, acknowledging Plaintiff had completed the additional work.

On January 13, 2016, Case Manager Webb issued Plaintiff a second conduct report pertaining to the Sovereign Citizen documents. This report charged him with participating in or associating with an unauthorized group. Prior to his conduct hearing, Corrections Officer Speilman came to his cell and told him to pack up his belongings for segregation. Plaintiff contends this proves the result was predetermined. He also contends he was not provided the full

---

[1] Although Corrections Officers Spielman and Spellman are Defendants in this case, Plaintiff does not bring suit against Corrections Officer Spillman.

3

(4:17CV2684)

48 hours notice prior to the hearing to allow him to call witnesses. He states the investigation into his conduct was not done correctly because he should have gone directly to segregation during the investigation, not after the finding of guilt. Plaintiff was found guilty of the charges. He was given a fourteen-day security review and moved to segregation.

In segregation, STG Coordinator Walton came to his cell to do a gang profile. Plaintiff indicates he was told he could refuse to participate and did. He later learned that Case Manager Webb had indicated he had done a security review at the same time and designated Plaintiff as a passive member of an STG. He raised Plaintiff's security classification level from a 1A to a 3B. Unit Manager Curry approved it. Plaintiff protested the increase, claiming he was denied due process, but the designation was upheld.

Plaintiff also indicates he informed Unit Manager Curry and Case Manager Webb of the final hearing in his divorce case. He needed to have a notary present. The complaint does not allege what other services Plaintiff required of the prison. Although he reminded them several times, no one showed up for the hearing on the date and time it occurred. Curry called the domestic relations court and spoke to the bailiff. She explained that Plaintiff missed his court date because he was in segregation, which Plaintiff claims was not true. He learned the case had been dismissed for failure to prosecute. Plaintiff asked several times to speak to his attorney. He claims Unit Manager Curry and Sergeant Elliott would not facilitate this call. He contends he was denied access to the courts and his Sixth Amendment right to counsel.

Plaintiff states he was moved from segregation to another cell on February 5, 2016. The heat in that cell was not functioning properly, causing it to feel abnormally cold. He complained

4

(4:17CV2684)

to corrections officers and received extra blankets but nothing was done to move him to a different cell or fix the heat. Plaintiff contends the temperatures were so cold that he could not sleep at night. He complained to a captain on February 10, 2016 and was moved to another cell.

Plaintiff alleges Institutional Inspector Shuler came to the segregation unit and demanded to know where he was. He indicates she yelled at him for filing numerous grievances.

Plaintiff asserts numerous claims against the NCCC Defendants. He contends McKinna committed libel and defamation for not admitting that she gave him the Sovereign Citizen documents or that she watched him prepare them. He asserts Webb subjected him to Double Jeopardy for charging him with STG conduct pertaining to the Sovereign Citizen documents when he had already been sanctioned for possessing them. He asserts he was denied access to the courts and his Sixth Amendment right to counsel when Curry, Webb, Donahue, and Elliott did not facilitate his call or make notary services available for his final divorce hearing. He claims he was denied due process and equal protection in violation of the Fourteenth Amendment and was unreasonably seized in violation of the Fourth Amendment when he was sanctioned for being a passive member of an STG. He claims he was placed in a cold cell in retaliation for grievances he filed. Finally, Plaintiff contends he suffered cruel and unusual punishment in violation of the Eighth Amendment.

**B. Trumbull Correctional Institution**

Plaintiff was transferred to TCI on March 22, 2016. He was placed in the #B Disciplinary Limited Privilege Unit. He was permitted to claim all of his property from NCCC except his

5

(4:17CV2684)

electronics. He continued to protest his STG designation as a passive member of the Sovereign Citizens.

Plaintiff indicates he needed to file an appeal with the Ohio Supreme Court. He asked for a library pass for times available to his unit. He indicates Librarian Filkorn did not respond. He sent a second request for a pass. He states Filkorn approved the pass but for dates and times he was not available. He filed a grievance against Filkorn. Principal Liztenburger called Plaintiff to his office on October 5, 2016 and asked Plaintiff what it would take to resolve his grievances. Plaintiff indicated he wanted a library pass for hours he could attend. On October 8, 2016, Plaintiff received the pass. He states it was too late for him to file his appeal. He indicates it was denied on December 14, 2016. Plaintiff asserts numerous claims against the TCI Defendants. He challenges his continued STG designation claiming, it denied him due process and equal protection. He asserts Filkorn denied him access to the courts.

### C. ODRC and Grievance Officers

Finally, Plaintiff alleges that the grievance officers at NCCC and TCI as well as those at the ODRC did not properly address his grievances to provide relief to him. He asserts they are also liable for the underlying violations asserted in the grievances.

## II. Standard of Review

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams,*

(4:17CV2684)

490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996). An action has no arguable basis in law when a defendant is immune from suit or when a plaintiff claims a violation of a legal interest which clearly does not exist. Neitzke, 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." Denton v. Hernandez, 504 U.S. 25, 32 (1992); Lawler, 898 F.2d at 1199.

The standard for dismissal articulated in Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) and " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) with respect to Fed. R. Civ. P. 12(b)(6) also governs dismissals under § 1915(e)(2)(B). Davis v. Prison Health Services, 679 F.3d 433, 437-38 (6th Cir. 2012). When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough fact to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 555. The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Although a complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." Id. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Supreme Court in Ashcroft v. Iqbal, 556 U.S. at 677-78, further explains the "plausibility" requirement, stating that "a claim has facial plausibility when the plaintiff pleads factual content

(4:17CV2684)

that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Furthermore, "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a Defendant acted unlawfully." *Id*. This determination is a "context-specific task that requires the reviewing Court to draw on its judicial experience and common sense." *Id*.

### III. Discussion

As an initial matter, Plaintiff names individuals as Defendants who did not directly participate in the events upon which he bases his Complaint. He includes them because they supervise other Defendants, or because they participated in the grievance process and did not rule favorably on his grievances. Neither of these is a proper basis for liability under 42 U.S.C. § 1983.

Supervisors cannot be held liable for the actions of their employees. They can only be held liable for their own unconstitutional behavior. *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (citing *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (1989)). Therefore, claims based on a supervisor's mere failure to act or their right to control other employees will not suffice. Plaintiff names Warden Turner, Deputy Warden Boyd, Education Administrator Creader, Deputy Warden Bowen, Lieutenant Black, Principal Liztenburger, and ODRC Director Gary Mohr as Defendants. To hold them liable in this action, he must prove that they did more than play a passive role in the alleged violations or show mere tacit approval of the people they supervise. *See id*. Plaintiff must show that they actively encouraged or engaged in those actions giving rise to his claims. *Id.*; *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995).

8

(4:17CV2684)

His claims against them, however, are based solely on their supervisory position and their authority to veto or override the decision of a subordinate. Plaintiff cannot base his § 1983 claims on a theory of *respondeat superior* liability.

Plaintiff's claims against Institutional Inspector L. Shuler, Institutional Inspector Frederick and Assistant Chief Inspector Kelly Reichle are founded on their answers to his grievances. Responding to a grievance or otherwise participating in the grievance procedure is, alone, insufficient to trigger liability under 42 U.S.C. § 1983. *Shehee v. Luttrell*, 199 F.3d. 295, 300 (6th Cir. 1999). *See Martin v. Harvey*, 14 F.App'x. 307, 309 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care.")

Furthermore, Plaintiff names other individuals as Defendants against whom no viable legal claim has been asserted. Ms. Donahue is a notary. He alleges she was not present at his final divorce hearing, although there is no indication she had actual notice that he wanted her to attend. Sergeant Elliott read conduct reports to him that were written by other officers. Corrections Officer Spielman relayed information from Sergeant Rushing to pack up his belongings prior to his Rules Infraction Board hearing. Corrections Officer Spellman was the person who monitored Plaintiff's additional work duty sanction. He alleges Rules Infraction Board Members Rushing and Seville found him guilty of the charges in Case Manager Webb's conduct report. None of these actions amount to a constitutional violation.

Plaintiff contends Librarian McKinna charged him with a conduct violation even though she made copies of the Sovereign Citizen documents and watched him work on the word

9

(4:17CV2684)

processors for months without telling him he could not possess the documents. He indicates she would not admit to culpability. He states he was falsely accused.

Plaintiff's allegations miss the mark for several reasons. First, Plaintiff was not falsely accused. He admitted to possession of the documents and admitted he was using the word processors for a purpose other than one that is explicitly authorized. His objection is not that he is in fact innocent of this behavior, but that he thought McKinna, through her actions, implicitly authorized his conduct. Based on Plaintiff's own allegations, McKinna did not support this conclusion. Furthermore, false accusations of misconduct filed against an inmate, alone, do not constitute a deprivation of constitutional rights. *See Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986); *see also Munson v. Burson*, No. 98-2075, 2000 WL 377038 at *3 (6th Cir. April 7, 2000). Plaintiff admitted to the conduct charges brought by McKinna. Therefore, he cannot now claim he was denied due process with respect to this charge.

Plaintiff also objects to the charges brought by Case Manager Webb pertaining to affiliation with an STG which resulted in an increase in his security classification level and his transfer to TCI. Prisoners have no constitutional right to be incarcerated in a particular prison or to be held under a specific security classification. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Cash v. Reno*, No. 97-5220, 1997 WL 809982, at *1-2 (6th Cir. Dec. 23, 1997). Under very limited circumstances, an increase in security classification may trigger due process protections. Prisoners have more narrow liberty interests than other citizens as "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515

10

U.S. 472, 485 (1995) (internal quotation marks omitted). "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Therefore, unless the placement imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the prisoner will have no constitutionally protected liberty interest impacted by the transfer. *Sandin*, 515 U.S. at 484.

Such a protected liberty interest generally will not be found unless placement in a segregated environment is accompanied by a withdrawal of good time credits or is for a significant period of time. *Id*. Assignment to a super-maximum security prison, for example, triggers due process protections, *Wilkinson*, 545 U.S. at 224, while temporary placement in disciplinary confinement is considered to be "within the range of confinement normally expected," *Sandin*, 515 U.S. at 487. Similarly, the Sixth Circuit has held a prisoner's designation as a member of an STG did not give rise to a protected liberty interest. *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005).

In this case, Plaintiff was found guilty of the conduct charge, his security classification was increased due to the change in his gang affiliation status, and he was transferred to TCI. Plaintiff alleges no facts suggesting this placement imposed an unusually severe hardship. He, therefore, fails to state a constitutional claim.

Also, Plaintiff asserts Webb subjected him to Double Jeopardy for charging him with an additional conduct violation after he had already been convicted of one charge related to the same conduct. The Sixth Circuit, however, has found administrative prison sanctions to be civil in

(4:17CV2684)

nature, noting that "[t]he Double Jeopardy Clause was not intended to inhibit prison discipline." *United States v. Simpson*, 546 F.3d 394, 398 (6th Cir. 2009); *see also Brock v. Lynn*, No. 5:15-CV-P225-TBR, 2016 WL 1060355, at *6 (W.D. Ky. Mar. 11, 2016) (concluding prison disciplinary proceedings are civil, not criminal, and do not invoke Double Jeopardy protections); *Flanigan v. Wilson*, No. 10-111-GFVT, 2011 WL 5024432, at *6 (E.D. Ky. Oct. 20, 2011) (stating "traditional rule [is] that prison disciplinary sanctions do not trigger the protections of the double jeopardy clause."); *Odom v. Smith*, No. 1:08-cv-1181, 2009 WL 125286, at *6 (W.D. Mich. Jan. 16, 2009) (finding prisoner failed to state double jeopardy claim based on prison officials' decision to confiscate his property because the taking of prisoner property is administrative in nature and the Double Jeopardy Clause does not apply to administrative proceedings). Thus, Plaintiff fails to state a claim upon which relief may be granted under the Double Jeopardy Clause.

Plaintiff also asserts Curry, Webb, and Elliott violated his Sixth Amendment right to counsel when they did not facilitate his call to his attorney. His complaint fails to indicate whether he was attempting to call his attorney for assistance with his prison disciplinary proceeding or his final divorce hearing. In either case, the Sixth Amendment right to counsel does not attach to those proceedings. Prison disciplinary proceedings are not part of a criminal prosecution, and inmates have no right to either retained or appointed counsel in those proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 570 (1974). Similarly, divorce cases are civil, not criminal in nature. The Sixth Amendment does not apply in civil cases. *Turner v. Rogers*, 564 U.S. 431 (2011).

12

(4:17CV2684)

Plaintiff contends Curry, Webb, Donahue, Elliott and Filkorn denied him access to the courts. To state a claim for denial of access to the courts, Plaintiff must allege that particular actions of Defendants prevented him from pursuing or caused the rejection of a specific, non-frivolous direct appeal, habeas corpus petition, or civil rights action. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). "Impairment of any other litigating capacity is simply one of the incidental, and perfectly constitutional, consequences of conviction and incarceration." *Id.* at 355 (stating that the First Amendment does not guarantee prisoners the ability to transform themselves into "litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims."). "The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id*. The right of access to the courts is "ancillary to the underlying claim, without which a Plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Plaintiff must therefore "plead and prove prejudice stemming from the asserted violation." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir.1996). In order words, he must demonstrate "actual injury" by showing that his underlying claim was non-frivolous, and that it was frustrated or impeded by Defendants. *Lewis*, 518 U.S. at 353. "It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the Complaint...." *Christopher*, 536 U.S. at 415.

To the extent Plaintiff is claiming Defendants refused to facilitate a call to his divorce attorney, he fails to state a claim upon which relief may be granted. Plaintiff is not guaranteed access to the courts for a domestic relations case. *Lewis*, 518 U.S. at 355.

(4:17CV2684)

Plaintiff also claims Librarian Filkorn did not grant him access to the law library, causing him to miss an October 7, 2016 appeal cut-off date with the Ohio Supreme Court in his criminal case. Plaintiff attaches the order which he attempted to appeal ([ECF No. 1-4 at PageID #: 352](ECF No. 1-4 at PageID #: 352)) and the Ohio Supreme Court's response ([ECF No. 1-4 at PageID #: 355](ECF No. 1-4 at PageID #: 355)). Plaintiff filed a delayed application to reopen his direct appeal with the Ohio Sixth District Court of Appeals. He later filed two motions to amend that application, stating he referenced the wrong case number on the application. The appellate court denied his motions because the delayed application had already been denied so there was no need to amend the case number. Plaintiff attempted to appeal the denial of those two motions and missed the cut-off date to file the appeal in the Ohio Supreme Court. The Ohio Supreme Court filed the documents, treating them as a motion for delayed appeal. The Ohio Supreme Court later denied the motion. Although Filkorn's assignments of library time may have contributed to Plaintiff missing the October 7, 2016 cut-off date, he was appealing the denial of two motions to correct a case number on an application which itself had already been denied. Filkorn's action, therefore, did not prevent him from pursuing a non-frivolous direct appeal.

Plaintiff also claims that his Fourth Amendment rights were violated because prison officials lacked probable cause to increase his security classification due to his gang affiliation status and confine him in a more restrictive environment. The Fourth Amendment protects against unreasonable searches and seizures, including warrantless arrests without probable cause. Plaintiff's claim is without merit because he was already in state custody by virtue of his criminal convictions when Defendants allegedly "seized" him and placed him in segregation and then a

14

(4:17CV2684)

higher security prison. *Hollins v. Curtin*, No. 1:13-CV-8, 2014 WL 320211, at *16 (W.D. Mich. Jan. 29, 2014). In other words, he was already lawfully subject to all the limitations on liberty incident to arrest and imprisonment. Transferring him from one area of the prison to a more restrictive area or from one prison to another did not constitute a "seizure" under the Fourth Amendment, and did not require a warrant or probable cause. *Id*.

Plaintiff asserts Defendants violated his Eighth Amendment rights. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Eighth Amendment protects inmates by requiring that "prison officials ... ensure that inmates receive adequate food, clothing, shelter, and medical care, and ... 'take reasonable measures to guarantee the safety of the inmates.' " *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). This, however, does not mandate that a prisoner be free from discomfort or inconvenience during his or her incarceration. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (citing *Rhodes*, 452 U.S. at 346). Prisoners are not entitled to unfettered access to the medical treatment of their choice, s*ee Hudson v. McMillian*, 503 U.S. 1, 9 (1992), nor can they "expect the amenities, conveniences and services of a good hotel." *Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir.1988); *see Thaddeus-X v. Blatter*, 175 F.3d 378, 405 (6th Cir. 1999). In sum, the Eighth Amendment affords the constitutional minimum protection against conditions of confinement which constitute health threats, but does address those

15

(4:17CV2684)

conditions which cause the prisoner to feel merely uncomfortable or which cause aggravation or annoyance. *Hudson*, 503 U.S. at 9-10 (requiring extreme or grave deprivation).

In *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), the Supreme Court set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred. *Id*. Seriousness is measured in response to "contemporary standards of decency." *Hudson*, 503 U.S. at 8. Routine discomforts of prison life do not suffice. *Id*. Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id.* at 9. A plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. *Id*. Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Liability cannot be predicated solely on negligence. *Id*. A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer*, 511 U.S. at 834 (1994).

Plaintiff has two possible Eighth Amendment claims. The first concerns his label as a passive member of an STG. Although it resulted in an increase in his security status and assignment to a more restrictive prison with fewer privileges, the label did not subject Plaintiff to conditions which endangered his health or safety. His second possible claim concerns his assignment to a cold cell for five days. Assuming without deciding that this presents a potential risk to his health, Plaintiff has not met the subjective element. Also, he does not indicate which

16

(4:17CV2684)

Defendant, if any, is responsible for his placement in that cell. There is no suggestion in the complaint that any Defendant knew of his placement in that cell or the conditions the cell presented. He has not stated a claim under the Eighth Amendment.

Similarly, Plaintiff contends his placement in the cell was in retaliation for grievances he filed. Retaliation, though it is not expressly referred to in the Constitution, is actionable because retaliatory actions may tend to chill an individual's exercise of First Amendment rights. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). To state a *prima facie* case for retaliation prohibited by the First Amendment, Plaintiff must establish: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection exists between the first two elements. *Thaddeus-X*, 175 F.3d at 394. Filing a grievance against prison officials is conduct protected by the First Amendment, *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000), and placement in a cold cell potentially would deter a person of ordinary firmness from engaging in that conduct. Plaintiff, however, failed to connect his placement in that cell with his filing of grievances. Plaintiff does not allege that any Defendant was aware of the conditions in the cell prior to his complaints. He also failed to identify a Defendant responsible for the alleged retaliation.

Plaintiff asserts that Defendants denied him equal protection. He does not explain this claim. It is stated entirely as a legal conclusion. Legal conclusions are not sufficient to state a claim for relief. *Twombly*, 550 U.S. at 555.

17

(4:17CV2684)

Finally, Plaintiff contends Librarian McKinna committed libel and defamation for not admitting that she gave him the Sovereign Citizen documents or that she watched him prepare them. These are state law claims. Supplemental jurisdiction exists whenever state law and federal law claims derive from the same nucleus of operative facts and when considerations of judicial economy dictate having a single trial. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966). The Court, however, may exercise discretion in hearing state law matters. *Id.* at 726. In cases when the federal law claims are dismissed before trial, the state law claims should also be dismissed. *Id*. Having dismissed Plaintiff's federal law claims, this Court declines jurisdiction to hear his state law claims.

### IV. Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

    IT IS SO ORDERED.

| | |
|---|---|
| June 21, 2018 | */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |